O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LINDA M. BOGOSIAN, | ) | Case No. SACV 11-1102-OP |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 6 at 3.)

# I.

# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly relied on the testimony of Sami Nafoosi, M.D., a non-board certified internist;

(2) Whether the ALJ properly considered the medical evidence of record; and

(3) Whether the ALJ properly considered Plaintiff's testimony.

(JS at 4-5.)

# II.

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

## III.

## DISCUSSION

**A.    The ALJ's Findings.**

On August 11, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits. On November 9, 2006, Plaintiff's claim was denied by initial determination. After Plaintiff's request for reconsideration of the initial determination was denied, Plaintiff requested a de novo hearing in front of an ALJ. (JS at 2.)

On June 4, 2008, the ALJ conducted a hearing. On July 14, 2008, the ALJ denied Plaintiff's application concluding that Plaintiff did not suffer from a disability at any time through the date of decision. (Id. at 2-3.)

On June 15, 2009, the Appeal's Council granted Plaintiff's request for review of the ALJ's decision. The Appeal's Council remanded the matter back to the ALJ with specific instructions. (Id. at 3.)

On August 16, 2010, the ALJ conducted a second hearing. On December 22, 2010, the ALJ denied Plaintiff's application. (Id. at 2-3.)

On remand, the ALJ found that Plaintiff did not engage in any substantial gainful activity since February 9, 2005. The ALJ also found medically determinable severe impairments of a disorder of the cervical spine, disorder of the lumbar spine, hepatitis B infection, fibromyalgia, and chronic fatigue syndrome, but that the impairments did not meet any of listed impairments contained in Title 20 of the Code of Federal Regulations section 404, subpart P, Appendix 1. (Administrative Record ("AR") at 22.) Furthermore, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work including: lifting and carrying twenty pounds occasionally and ten pounds frequently; sitting for eight hours in an eight-hour day; standing and walking for six hours in an eight-hour day; changing positions briefly for one to three minutes hourly; occasional climbing, balancing, kneeling, stooping, crouching, crawling,

and work above shoulder level but limited to no ladders, unprotected heights, dangerous or fast moving machinery. (Id. at 23.)

The ALJ found that Plaintiff was capable of performing her previous work as a receptionist and therefore did not suffer from a disability. (Id. at 27.)

**B.    The ALJ Did Not Properly Rely on the Testimony of Dr. Nafoosi, a Non-Board Certified Internist.**

In making her findings, the ALJ gave "greatest weight to the opinions of Sami A. Nafoosi, M.D., an impartial medical expert," even referring to Dr. Nafoosi as a "board certified internist." (Id. at 24.) As Plaintiff points out, Dr. Nafoosi allowed his board certification to lapse and was no longer board certified at the time of the first hearing in 2008, or at the time of the second hearing in 2010. (JS at 6.)

Plaintiff contends that the Court should vacate and remand this action for further proceedings because the ALJ primarily based her findings on Dr. Nafoosi's opinion, believing him to be a board certified internist when he was not. The Court agrees.

The American Board of Internal Medicine ("ABIM") requires that physicians must accurately state their certification status at all times. The ABIM further requires that physicians with expired certification must revise all descriptions and qualifications accordingly. The ABIM views misrepresentation of certification status as a serious matter and may "suspend or revoke certification, suspend or revoke the physician's opportunity to participate in the certification or maintenance of certification process, and may notify local credentialing bodies, licensing bodies, law enforcement agencies and others." AMERICAN BOARD OF INTERNAL MEDICINE, *General Policies & Requirements*, http://www.abim.org/certification/policies/general-policies-requirements.aspx (last visited May 11, 2012). According to the ABIM website, certification is valid for a period of ten years. AMERICAN BOARD OF INTERNAL MEDICINE, *Maintenance &*

*Recertification Guide*, http://www.abim.org/moc/default.aspx (last visited May 11, 2012). On Dr. Nafoosi's curriculum vitae, which he submitted for the earlier 2008 hearing (AR at 171) and again prior to the 2010 hearing, Dr. Nafoosi merely indicated that he was board certified in internal medicine in 1997. Arguably, Dr. Nafoosi failed to comply with the ABIM's policy by failing to clearly indicate on his curriculum vitae that his board certification lapsed in 2007.

      Defendant terms this issue to be a "red herring." However, this Court finds it troubling that Dr. Nafoosi continues to be held out as a board certified internist when his board certification actually lapsed in 2007. In fact, in several cases after 2007, it is clear that an ALJ or the Court believed Dr. Nafoosi to be board certified. See, e.g., Diaz v. Astrue, No. 11-1538-JC, 2012 WL 1048451, at *4 (C.D. Cal. Mar. 28, 2012) (ALJ referred to Dr. Nafoosi as a board certified internist); Richardson v. Astrue, No. 09-4451-CT, 2009 WL 4823861, at *7 (C.D. Cal. Dec. 11, 2009) (ALJ referred to Dr. Nafoosi as a board certified internist); Vittatoe v. Astrue, No. 08-978-CT, 2009 WL 122569, at *11 (C.D. Cal. Jan. 16, 2009) (court referred to Dr. Nafoosi as a "specialist" in internal medicine).

      The question is whether Dr. Nafoosi's "sin of omission" was an important factor in the weight given to the medical evidence in this case. The fact that the ALJ specifically mentioned Dr. Nafoosi's board certification to support her finding supports Plaintiff's contention that it was. (See AR at 24.) Moreover, at the first hearing, the parties stipulated to Dr. Nafoosi's qualifications without noting or questioning whether he still had a valid certification. (Id. at 76.) This hearing was only a few months after the certification lapsed. Plaintiff was unrepresented at the second hearing, and there was no stipulation regarding Dr. Nafoosi's qualifications. Instead, the ALJ asked claimant if she had any objections to Dr. Nafoosi's qualifications and, notably, when Plaintiff tried to

5

inquire about his specialty, the ALJ did not allow Plaintiff to make her point.[3] (Id. at 43-44.)

Specialization is an important factor in the weight given to medical evidence in Social Security cases and the opinion of a specialist is generally given more weight. 20 C.F.R. 404.1527(c)(5). Board certification is recognized as a "marker of a physician's professionalism, knowledge and skill" and allows physicians to test and enhance their clinical judgment and skills. Board certified internists must enroll in a Maintenance of Certification program and take an examination to stay current. AMERICAN BOARD OF INTERNAL MEDICINE, *About the American Board of Internal Medicine 1* (2011). As a result, these extra requirements enhance a physician's qualifications and are essential to recognition as a specialist. Although certification is unnecessary, it is an added prestige upon which ALJs tend to rely. See Arquette v. Astrue, No. 09-02295-OP, 2010 WL 4916603, at *4 (C.D. Cal. Nov. 24, 2010) (ALJ rejected a doctor's opinion because she is not "[b]oard certified in psychology or anything else"); 20 C.F.R. § 404.1527(c)(5).

Since the ALJ gave "greatest weight" to Dr. Nafoosi's opinion, relying at least to some extent on her misimpression that Dr. Nafoosi was a board certified internist, the matter should be remanded for a new hearing so that the ALJ can have an opportunity to properly consider the medical expert testimony in light of Dr. Nafoosi's actual qualifications.

**C.     The ALJ Did Not Properly Consider the Medical Evidence of Record.**

Plaintiff complains that the ALJ did not give specific and legitimate

---

[3] Plaintiff wanted to ask Dr. Nafoosi about his specialization because Dr. Nafoosi apparently had mistakenly testified that Hasihmoto's "only lasts 12 months" when it is an autoimmune disease with no cure. (AR at 43.) The ALJ cut her off stating that "that doesn't address his qualifications." (Id.) Under the circumstances discussed herein, this Court disagrees.

6

reasons for rejecting the opinions of her examining and treating physicians. Plaintiff also contends that the ALJ erred in relying on the non-examining physician's findings. The Court agrees.

### 1. The ALJ Did Not Provide Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinions.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

Here, the ALJ rejected the opinions of Drs. Shokrae, Crumpton, and Khurana but failed to give specific and legitimate reasons for doing so.

The ALJ contends that the opinions of Dr. Shokrae are not completely

consistent with the objective medical evidence of record. However, the Court questions whether the ALJ actually considered the objective medical evidence of record. First, the ALJ rejected Dr. Shokrae's opinion based on the contention that Dr. Shokrae did not diagnose Plaintiff with fibromyalgia despite objective evidence of the record indicating otherwise. For example, Dr. Shokrae wrote that he believed that Plaintiff is suffering from fibromyalgia (AR at 568), had the impression that Plaintiff possessed symptoms suggesting fibromyalgia (id. at 551), and that the patient's neurological examination showed results consistent with a diagnosis of fibromyalgia (id. at 552). Dr. Shokrae even recommended that Plaintiff take Lyrica, a prescribed drug to treat fibromyalgia. (Id. at 561.) The fact that Dr. Shokrae recommended a drug regimen to treat fibromyalgia is inconsistent with the ALJ's contention that Dr. Shokrae's did not diagnosis Plaintiff with fibromyalgia.

Next, the ALJ indicated that Plaintiff had a "generally normal neurological examination with intact sensation, normal muscle strength, and intact symmetric gait, with the exceptions of the latest examination, which noted the presence of decreased muscle strength in the bilateral upper extremities." (Id. at 25.) A review of Dr. Shokrae's actual report reveals that the ALJ misrepresented the report, which actually indicated a finding that Plaintiff is "totally and completely disabled." (Id. at 605.) Further, the ALJ seems to contend that just because Dr. Shokrae's previous examinations indicated that Plaintiff "produces normal examinations with normal sensation, muscle strength, normal gait, and no atrophy" that she must not be disabled with regard to all other assessments and even brushes over the fact that a later evaluation actually showed decreased muscle strength. (Id. at 604.) In rejecting Dr. Shokrae's opinion, the ALJ failed to provide any reason as to why Plaintiff's other symptoms, such as dizziness, tender spots of fibromyalgia, diffuse musculo-skeletal pain, or palpitation, should be disregarded. Instead, the ALJ appears fixated on Plaintiff's normal attributes and

lack of atrophy.

In addition, the ALJ rejected Dr. Crumpton's opinion based on his examination of Plaintiff but again failed to provide specific and legitimate reasons for the rejection. The ALJ indicated that Dr. Crumpton's treatment notes did not show neurological deficits, muscle atrophy, or weakness that would support his opinion that Plaintiff is unemployable. Instead of focusing on what Dr. Crumpton did not find, the ALJ should clearly indicate why Dr. Crumpton's actual findings of impairment, which includes fibromyalgia, Epstein-Barr Syndrome, Hashimoto's Thyroiditis, joint and muscle pain, fatigue, poor concentration, and heart palpitations, do not support a finding of disability.

Finally, the ALJ rejected Dr. Khurana's opinion that Plaintiff would have difficulty finding gainful employment due to decreased range of motion in the spine and evidence of chondromalacia patellae. In rejecting Dr. Khurana's findings, the ALJ cites the fact that the doctor's examination did not produce evidence of muscle weakness or atrophy. (Id. at 26.) However, the ALJ failed to articulate why Dr. Khurana's findings of impairment do not support a finding of disability, or explain why muscle weakness and atrophy is necessary for a finding of disability.

On remand, the ALJ should set forth legally sufficient reasons for rejecting the opinions of Drs. Shokrae, Crumpton, and Khurana, if the ALJ again determines rejection is warranted.

### 2. The ALJ Did Not Properly Rely on the Non-Examining Physician's Opinion.

The ALJ based her finding on Dr. Nafoosi's opinion, who agreed that Plaintiff has the RFC to perform light work with exceptions, as indicated in the ALJ's findings. (Id. at 23-24.)

The opinion of an examining physician, is entitled to greater weight because the physician has had the opportunity to observe the patient and assess the

patient's impairments. Magallanes, 881 F.2d at 751 (9th Cir. 1989). The opinion of a reviewing physician who has never examined the claimant, is not usually entitled to great weight. 20 C.F.R. § 404.1527(d). The ALJ may only give greater weight to a non-examining physician's opinion when there is significant evidence in the record which supports that opinion. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). The opinion of an examining physician can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Id. at 603-04 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). As already articulated above, the ALJ's reliance on Dr. Nafoosi's opinion needs to be reexamined in light of his lack of board certification.

On remand the ALJ should also address the foregoing deficiencies.

**D.     The ALJ Did Not Properly Consider Plaintiff's Testimony.**

Finally, Plaintiff contends that the ALJ improperly rejected her complaints of pain and limitation testimony, specifically Plaintiff's statement that she spends twenty hours per day in bed. (JS at 21-22.)

In her decision, the ALJ rejected Plaintiff's credibility as follows:

> [T]he undersigned also addresses the credibility of the claimant as it relates to statements made regarding the extent and severity of the claimant's impairments and the limitations they cause. One factor affecting the claimant's credibility is the consistency of her statements she made about her conditions and limitations. The claimant alleged that she spends 20 hours a day or more in bed because she cannot sit or stand for extended periods. She also alleged that her condition has worsened. Based on that allegation, it can be concluded that she needs to spend even more time in bed. However, there are no objective signs or findings that support the allegation she is in bed 20-plus hours a day. There is no muscle atrophy because of a lack of use of her muscle by

>being in bed most of the day. Additionally, there is no evidence of bed sores or other such conditions that develop from lying down for a majority of the day. Further, the claimant told the consultative psychiatrist that she is capable of household chores, running errands, and self care without any problems. This too is inconsistent with the allegation that she is in bed 20 hours a day. Thus, the undersigned finds her credibility is diminished because of these inconsistencies.
>
>Another factor affecting claimant's credibility is her work history. The claimant alleged that she suffered from these impairments for a number of years dating back to the 1990s. In spite of these conditions she was capable of working with and through her impairments for a number of years. As such, the claimant's work history shows she is capable of working in spite of her conditions. Thus, the undersigned finds her credibility is further diminished.

(AR at 27.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas, 278 F.3d at 958-59; see also Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen, 80 F.3d at 1281; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

The record does not reflect clear and convincing reasons for rejecting Plaintiff's testimony regarding her limitations. The ALJ discredited Plaintiff's testimony due to a lack of bed sores or signs of atrophy. Plaintiff is not suggesting that she is bedridden; she indicated that she is in bed "20 plus hours a day" but can be up for short periods of time. (AR at 254.) The ALJ seems to assume that spending that much time in bed must lead to atrophy and bed sores. The ALJ also does not account for the amount of time, although limited, that Plaintiff claims she is active. Furthermore, these conclusions that Plaintiff must suffer from bed sores and atrophy are not supported by a medical expert. It is inappropriate for the ALJ to substitute her own medical conclusions for those of the physicians. Tacket v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999).

The ALJ also attacks Plaintiff's credibility by assuming that because Plaintiff is in bed for at least twenty hours a day, she must be incapable of

household chores, errands, and self care. Even if Plaintiff is in bed for twenty hours, that still leaves four hours for Plaintiff to be somewhat active. Finally, the ALJ contends that claimant suffered from these impairments for years but continued to work and should be capable of working now. The ALJ's conclusion does not take into account Plaintiff's testimony that her conditions have worsened. (AR at 287.)

There are, however, inconsistencies in the record compromising the credibility of Plaintiff's testimony that the ALJ failed to mention. For example, during the administrative hearing Plaintiff responded that she does not do any housework, yard work, and does not read. (Id. at 73-74.) To the contrary, Plaintiff's psychiatric report indicates that Plaintiff has no difficulty completing household tasks and that Plaintiff "spends the day reading, watching television, listening to the radio, and talking with family and friends." (Id. at 477.) This discrepancy may be explained by the lapse in time between when the statements were made (the hearing took place in 2008 and the psychiatric report is dated 2006), but perhaps should be addressed on remand. Even given this discrepancy, the ALJ must still present in her findings clear and convincing reasons to reject Plaintiff's testimony. The ALJ has failed to do this.

Therefore, on remand the ALJ should articulate clear and convincing reasons for rejecting Plaintiff's testimony that are not based on her own medical speculation and unsounded assumptions.

/ / /

/ / /

/ / /

/ / /

/ / /

IV.

**ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated: May 31, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge